UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

EDWARD REUBEN FRASER,                    No. 12-cv-2169 (MJD/LIB)

　　　　　　　　Plaintiff,

v.                                                **REPORT AND RECOMMENDATION**

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

　　　　　　　　Defendant.

---

　　　　Edward Reuben Fraser (Plaintiff) seeks judicial review of the decision of Carolyn W.

Colvin, Acting Commissioner of Social Security, ("Defendant" or "the Commissioner") denying

his application for disability insurance benefits.  The matter was referred to the undersigned

United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and

Local Rule 72.1.  This Court has jurisdiction over the claims pursuant to 42 U.S.C. §§ 405(g) and

1383(c).  Both parties submitted motions for summary judgment.  (Pl.'s Mot. Summ. J. [Docket

No. 10]; Def.'s Mot. Summ. J. [Docket No. 13]).  For the reasons set forth below, the Court

recommends that Plaintiff's motion for summary judgment be DENIED, and Defendant's motion

for summary judgment be GRANTED.

## I.　　BACKGROUND[1]

### A.  Procedural History

　　　　In December 2009, Plaintiff filed an application for Social Security Disability benefits,

alleging that his disability began in October 21, 2009.  (Tr. 99-102).[2]  The Commissioner denied

---

[1] Throughout this Report and Recommendation, the Court refers to the administrative record [Docket No. 5] for the
present case by the abbreviation "Tr."

the claims.[3]  (Tr. 57-61).  On February 16, 2010, Plaintiff filed a Request for Reconsideration, (Tr. 54), and on February 18, 2010, the Commissioner affirmed her earlier decision to deny the claims.  (Tr. 55-57).  Pursuant to Plaintiff's Request for Hearing by an Administrative Law Judge (ALJ), Leonard A. Nelson conducted a hearing on April 28, 2011.  (Tr. 28-43).  After the hearing, the ALJ issued a decision, (Tr. 13-27), finding that Plaintiff was not disabled within the meaning of the Social Security Act from October 21, 2009, through May 17, 2011, the date of the ALJ's decision.  (Tr. 16).  On June 6, 2011, Plaintiff timely sought review of the ALJ's decision with the Appeals Council.  (Tr. 12)  On August 15, 2012, the Appeals Counsel denied review.  (Tr. 1-5).  Consequently, the ALJ's decision became the final decision of the Commissioner.  See 20 C.F.R. §§ 404.981, 416.1481.

## B.  Factual History

Plaintiff was born on September 10, 1961, making him 49 years old at the time he asserts his disability began, and 51 years old at the time of this writing.  (Tr. 99, 117, 164, 175).  He graduated from Brainerd (Minnesota) Senior High School attending special education classes.  (Tr. 122, 264).  He also completed a year-long course in auto body repair at Brainerd (Minnesota) Technical College, (Tr. 264, 310), and at one time was licensed to operate fork lifts, Walkie Riders,[4] and E-Z-GO vehicles.[5]  (Tr. 264).[6]

---

[2] Plaintiff's application indicates an application date of December 16, 2009.  (Tr. 99).  However, the ALJ's decision indicates an application date of December 2, 2009.  (Tr. 16).  Because neither party alleges that Plaintiff's application date is relevant to their respective motions for summary judgment, the Court need not address this apparent discrepancy.

[3] Plaintiff's Notice of Disapproved Claim is dated February 5, 2010.  (Tr. 46-50).  However, the ALJ's decision indicates an initial denial date of January 10, 2010.  (Tr. 16).  Because neither party alleges that Plaintiff's initial denial date is relevant to their respective motions for summary judgment, the Court need not address this apparent discrepancy.

[4] The Commissioner represents that, to the best of her knowledge, a Walkie Rider is also a type of forklift.  (Def.'s Mem. Supp. Mot. Summ. J. [Docket No. 14], at 3, n.1).

[5] The Commissioner represents that, to the best of her knowledge, an E-Z-GO vehicle is a type of golf cart.  (Def.'s Mem. [Docket No. 14], at 3, n.1).

[6] The record does not reflect whether Plaintiff is still, at present, licensed to operate such vehicles.

Plaintiff appears to have been continuously employed—sometimes holding multiple jobs at once—for most of the fifteen (15) years preceding his application:

- He worked at a warehouse as an "order packer" approximately eight (8) hours per day, five (5) days per week, from May 1996 to March 2001, (Tr. 123);

- He worked at Fingerhut as an order packer approximately eight (8) hours per day, five (5) days per week, from September 1999 to May 2002, (Tr. 123, 264-65);

- He worked at Herberger's receiving and unloading trucks approximately eight (8) hours per day, three (3) days per week, from August 2001 to April 2003, (Tr. 123, 264);

- He worked at J.C. Penney's receiving and unloading shipments approximately eight (8) hours per day, five (5) days per week, from April 2003 to October 2004, until he was terminated, (Tr. 36, 123, 264);

- He worked at Big Lots unloading trucks and helping to get stock to the floor, first part time, then full time, then part time again, from May 2002 to October 21, 2009, when he was terminated. (Tr. 35, 123, 163, 264).

Plaintiff's termination date at Big Lots coincides with the alleged onset of his disability. (Compare Tr. 123 (termination date October 21, 2009), with Tr. 99 (alleged onset of disability on October 21, 2009).

At the hearing, Plaintiff testified[7] that he was applying for disability benefits because of a "mild learning disability," but that physically he was "in good shape." (Tr. 32). Plaintiff also testified that he had recently obtained a part-time job helping to unload trucks at TJ Maxx. (Tr. 33).

---

[7] The facts reported in this paragraph are based on Plaintiff's testimony at the August 23, 2010, hearing before the ALJ. (See Tr. 28-43).

### C. Medical Evidence in the Record

On September 29, 2005 (when Plaintiff was 44 years old), psychologist James F. Lewis, Ed.D. ("Mr. Lewis"), administered a Wechsler Adult Intelligence Scale—3d Edition ("WAIS ") upon Plaintiff, who received a verbal IQ score of 66 +6 -4 (1st percentile), a performance IQ score of 69 +9 -5 (2d percentile), and a full scale IQ score of 65 +5 -3 (1st percentile) (collectively, the "2005 IQ scores").  (Tr. 265).  Mr. Lewis described these IQs as being "mildly developmentally disabled."  (Tr. 265).  Subsequently, on January 29, 2010, Plaintiff was given a psychological examination by Dennis Anderson, M.A., L.P. ("Mr. Anderson"), of Minnesota Disability Determination Services.  (Tr. 300-05).  Mr. Anderson concluded that Plaintiff "does appear to be experiencing a reduced level of social/vocational functioning.  This is likely the direct result of his limited intellectual capacity."  (Tr. 304).  Mr. Anderson further concluded that Plaintiff "appears to be an unsophisticated, somewhat naïve but pleasant person who would likely attempt to do well at whatever job he acquired.  However, job performance is likely to be limited."  (Tr. 304).  Finally, Mr. Anderson described Plaintiff's intellectual functioning as "likely in the mildly retarded range."  (Tr. 304).

The record also contains the results of an earlier evaluation, performed on July 10, 1984 (when Plaintiff was 22 years old), by school psychologist Robert D. Coates, Ed.S. ("Mr. Coates").  (Tr. 310-12).  Mr. Coates reported that Plaintiff had previously been evaluated on August 3, 1981 (when Plaintiff was 19 years old), and at that time he "received a Full Scale [Wechsler Adult Intelligence Scale—Revised] IQ of 85" (the "1981 IQ score").  (Tr. 310).  Mr. Coates performed his own evaluation using the Wechsler Adult Intelligence Scale—Revised, whereupon Plaintiff received a verbal IQ score of 79, a performance IQ score of 82, and a full scale IQ score of 79 (collectively, the "1984 IQ scores").  (Tr. 311).  Mr. Coates concluded that

Plaintiff was "at a serious disadvantage in competing for employment given his intellectual and academic skill deficits," but that Plaintiff's "abilities are not so low that characterizing him as Mentally Handicapped would be appropriate." (Tr. 311-12).

### D. Hearing Testimony

As reported in Part I.B, supra, Plaintiff testified at his hearing that he was physically in good shape, but had a "mild learning disability," and that he had recently obtained part-time employment at TJ Maxx. (Tr. 32-33).

The ALJ also took testimony from medical expert Dr. Shelling,[8] who stated that Plaintiff had been diagnosed with "borderline intellectual functioning, low IQ," with an IQ of 65. (Tr. 39-40). Dr. Shelling also testified that at least one previous evaluator reported that Plaintiff "had a mild schizoid [personality] disorder"; however, Dr. Shelling stated his opinion that Plaintiff likely did not have a personality disorder, but instead that what presented as possible symptoms of a personality disorder were merely "secondary to the [low] cognitive functioning." (Tr. 39). When asked if he would place Plaintiff on any work restrictions, Dr. Shelling said the he would limit Plaintiff to "simple routine tangible kinds of work activities," such as "tasks that don't require very rudimentary academic skills with respect to math and reading," and that he would "limit him to brief and superficial contact with fellow employees and supervisors" and "infrequent [contact] with the public." (Tr. 39-40). Aside from cognitive impairment, however, Dr. Shelling testified that he observed no other condition that would impair Plaintiff's vocational functioning. (Tr. 40-41).

Finally, the ALJ took testimony from vocational expert Mr. Adkin,[9] who testified that Plaintiff could return to the jobs he had held over the past fifteen (15) years, which required little

---

[8] The hearing transcript identifies Dr. Shelling only by his last name. (See Tr. 38).
[9] The hearing transcript identifies Mr. Adkin only by his last name. (See Tr. 41).

by way of academic skills, and required no more than brief and superficial interaction with co-workers and the public.  (Tr. 41-42).

### E.  Administrative Decisions

In his May 17, 2011, decision, the ALJ found that Plaintiff "has not been under a disability within the meaning of the Social Security Act from October 21, 2009, through the date of this decision."  (Tr. 16).

The ALJ began by outlining the five-step sequential evaluation process for determining whether an individual is disabled, (Tr. 17 (citing 20 C.F.R. § 404.1520(a))), and described each step in turn: first, "whether the claimant is engaging in substantial gainful activity," (Tr. 17 (citing 25 C.F.R. § 404.1520(b))); second, "whether the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe,'" (Tr. 17 (citing 20 C.F.R. § 404.1520(c))); third, "whether the claimant's impairment or combination of impairments meets or medically equals the criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1," (Tr. 17 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526));[10] fourth, "whether the claimant has the residual functional capacity to perform the requirements of his past relevant work," (Tr. 17 (citing 20 C.F.R. § 404.1520(f)));[11] and finally, "whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is not able to do other work and meets the duration requirement, he is disabled."  (Tr. 18).

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability, on October 21, 2009.  (Tr. 18).

---

[10] If the claimant's impairment or combination of impairments does not meet or exceed a listing, the clamiant does not proceed to the next step.  (Tr. 17).
[11] The claimant's prior fifteen (15) years of work experience are considered at this stage.  (Tr. 17-18).

Additionally, the ALJ found that Plaintiff had two "severe impairments: borderline intellectual functioning; and mild schizoid personality." (Tr. 18 (citing 20 C.F.R. § 404.1420(c))).

At Step 3, the ALJ considered whether Plaintiff met or medically equaled the criteria for Listings 12.02, 12.05, and 12.08. (Tr. 19).[12] In considering Listing 12.05, the ALJ considered whether Plaintiff met or medically equaled the criteria of Listing 12.05, the ALJ evaluated Plaintiff under 12.05A, 12.05B, 12.05C and 12.05D. (Tr. 19-20). Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. at 18-20). Additionally, the ALJ found that Plaintiff had the residual capacity to perform unskilled work requiring low academic skills, limited contacts with co-workers and supervisors, and infrequent public interaction. (Tr. 20-21). The ALJ further found that, although Plaintiff's impairments might be expected to cause his alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21-22). Finally, the ALJ concluded that Plaintiff is capable of performing work equivalent to his past work as a store laborer, and, consequently, that Plaintiff was not disabled, as defined by the Social Security Act, between October 21, 2009, the date of the alleged onset of disability, and May 17, 2011, the date of the ALJ's decision. (Tr. 22-23).

## II. STANDARD OF REVIEW

Congress imposed standards for determining whether a claimant is entitled to Social Security disability benefits. "Disability" means "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . .

---

[12] Listing 12.02 covers organic mental disorders, Listing 12.05 covers mental retardation, and Listing 12.08 covers personality disorders. 20 C.F.R. Part 404, Subpart P, App'x 1, Listing 12.02, <u>available at</u> http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited July 15, 2013) (hereinafter "<u>Social Security Bluebook</u>").

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for benefits, an individual's impairments must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence on the record as a whole. Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005). Substantial evidence means more than a scintilla, but less than a preponderance. Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009). The "substantial evidence on the record as a whole" standard, however, is "a more scrutinizing analysis," which requires "more than a mere search of the record for evidence supporting the [Commissioner]'s findings." Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987) (brackets in original, internal quotations and citations omitted). Rather, when evaluating whether there is substantial evidence on the record as a whole, the court "must take into account whatever in the record fairly detracts from its weight." Id. (quoting Universal Camera Corp. v. National Labor Relations Bd., 340 U.S. 474, 488 (1951)).

When reviewing the record for substantial evidence, the Court may not reverse the Commissioner's decision simply because substantial evidence exists to support the opposite conclusion. Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984). Moreover, the Court may not substitute its own judgment or findings of fact for those of the ALJ. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Trboyevich v. Astrue, No. 11-cv-2911 (SRN/AJB), 2012 U.S. Dist. LEXIS 140452, at *25 (D. Minn. Sept. 12, 2012) (Boylan,

M.J.) (quoting <u>Gavin</u>, 811 F.2d at 1199)), <u>adopted by</u> 2012 U.S. Dist. LEXIS 138863 (D. Minn. Sept. 27, 2012) (Nelson, J.).  After balancing the evidence, "if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the Court] must affirm the decision."  <u>Robinson v. Sullivan</u>, 956 F.2d 836, 838 (8th Cir. 1992).  Thus, the Court will not reverse the ALJ's decision "so long as the ALJ's decision falls within the 'available zone of choice.'"  <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 20008) (quoting <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006)).[13]

## III.     DISCUSSION

Plaintiff argues that the ALJ committed reversible error in failing to find that he was mildly mentally retarded and, as a result of his mental retardation, that he met or medically equaled the criteria for Listing 12.05C.[14]  (Pl.'s Mem. Supp. Mot. Summ. J. [Docket No. 11], at 1, 7-9).[15]  Additionally, Plaintiff argues that the ALJ failed to "fully and fairly" develop the record by not inquiring further of the medical expert, Dr. Shilling, during the administrative hearing.  (<u>Id.</u> at 9).  Finally, Plaintiff argues that the ALJ failed to consider, or to fully develop a record of, a number of conditions secondary to his mental retardation, which Plaintiff refers to as "other issues."  (<u>Id.</u> at 9-10).

Defendant argues that Plaintiff waived this argument by failing to argue each of the elements.  (Def.'s Mem. Supp. Mot. Summ. J. [Docket No. 14], at 6-7).  In the alternative,

---

[13] The "zone of choice" is that area where the evidence "allows for the possibility of drawing two inconsistent conclusions . . . within which the Secretary may decide to grant or deny benefits without be subject to reversal on appeal." <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994).

[14] In addition to Listing 12.05C, the ALJ considered whether Plaintiff met or medically equaled the criteria for Listings 12.02, 12.05A, 12.05B, 12.05D, and 12.08, and found that he did not.  (Tr. 18-20).  Plaintiff, however, challenges the ALJ's decision only as regards 12.05C.  (<u>See</u> Pl.'s Mem. [Docket No. 11], at 1, 7-9).  Consequently, the Court need not consider whether substantial evidence on the record as a whole supports the ALJ's findings with respect to Listings 12.02, 12.05A, 12.05B, 12.05D, or 12.08.

[15] Although the Docket reflects that Docket No. 11 is Plaintiff's *affidavit* in support of his motion for summary judgment, the document itself is styled as, and its substance is that of, a *Memorandum* in support of the motion. Thus, the Court refers to Docket No. 11 as Plaintiff's Memorandum in Support of his Motion for Summary Judgment.

Defendant argues that the medical testimony supports the ALJ's finding that Plaintiff did not meet or equal the criteria for Listing 12.05C. (<u>Id.</u> at 7-8). Finally, Defendant disputes Plaintiff's contention that the ALJ failed to consider or fully develop a record of Plaintiff's "other issues." (<u>Id.</u> at 8-11).

**A. Plaintiff has not waived his argument that he is disabled under Listing 12.05C.**

Defendant argues that Plaintiff waived his claim regarding Listing 12.05C by failing to specifically articulate how he meets each of the elements of the listing. (Def.'s Mem. [Docket No. 14], at 6-7).

Listing 12.05C provides:

> *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

<u>Social Security Bluebook</u>, at 12.05. The Eighth Circuit "has interpreted Listing 12.05(C) to require a claimant to show each of the following three elements: '(1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" <u>McNamara v. Astrue</u>, 590 F.3d 607, 610-11 (8th Cir. 2010) (quoting <u>Maresh v. Barnhart</u>, 438 F.3d 897, 899 (8th Cir. 2006)).

Defendant's argument turns on the second element, whether Plaintiff has demonstrated "an onset of impairment before age 22." (Pl.'s Mem. [Docket No. 14], at 7). Relying on the case of <u>Ollila v. Astrue</u>, No. 9-cv-3394 (JNE/AJB), 2011 U.S. Dist. LEXIS 13222 (D. Minn. Jan.

13, 2011) (Boylan, C.M.J.), <u>adopted by</u> 2011 U.S. Dist. LEXIS 13366 (D. Minn. Feb. 10, 2011) (Erisksen, J.), Defendant argues that "[b]ecause Plaintiff does not reference that element—let alone attempt to connect the facts to it—the claim is waived." (Pl.'s Mem. [Docket No. 14], at 7).

In <u>Ollila</u>, the plaintiff did not so much as "indicate[] which listing(s) she believes that she meets or equals, [and] ha[d] not cited any evidence in the record, whether submitted before or after the hearing, in support of her bare allegation that she equal[ed] a listing." <u>Ollila</u>, 2001 U.S. Dist. LEXIS 13322, at *28. In light of such a complete failure to articulate the nature of her claim, the <u>Ollila</u> court held that "[b]ecause Plaintiff did not connect the facts of the case to a particular listing, the argument is waived, and no further review by the court is required." <u>Id.</u> It is this passage from <u>Ollila</u> that Defendant cites for the proposition that Plaintiff waived his claim under Listing 12.05C by failing to specifically articulate how he met the listing's second element.

Defendant misreads <u>Ollila</u>. The <u>Ollila</u> court held only that a claimant cannot simply describe their symptoms and ask the Court on its own to find a listing they might meet or medically equal. It <u>did not</u> hold that a claimant who fails to draw as clear a line as Defendant might want from a fact otherwise properly presented in their claim to an element of a specified listing has, by such failure, waived their claim. This is evident from the case law the <u>Ollila</u> court cited in support of its conclusion, in particular its citation to <u>Vandenboom v. Barnhart</u>, 421 F.3d 745, 750 (8th Cir. 2005). The <u>Vandenboom</u> court "reject[ed] out of hand Vandenboom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05(C) because Vandenboom provides no analysis [whatsoever] of the relevant law or facts regarding these listings." <u>Id.</u>

In the present case, Plaintiff has neither failed to indicate which listing he believed he met or medically equaled, nor failed to provide analysis thereto of relevant law or of facts in the record. In fact, Plaintiff states that he believes the ALJ erred as a matter of law specifically with regard to Listing 12.05C. (Pl.'s Mem. [Docket No. 11], at 1, 7-9). Additionally, Plaintiff cited to the document in the administrative record that provides the results of an IQ test taken before age 22. (Id. at 8 (citing Tr. 310)). Consequently, on the record as presented, the Court cannot conclude that Plaintiff waived his argument with regard to Listing 12.05C.

Finally, Defendant relegates to a footnote its request that, in the event that the Court finds that Plaintiff has not waived his argument with regard to Listing 12.05C, the Commissioner be allowed "an opportunity to brief it on the merits." (Def.'s Mem. [Docket No. 14], at 7, n.2). The Court notes that Defendant had adequate time to brief the issue, and, in fact, did provide argument on the merits with regard to Listing 12.05C. (See Id. at 7-8). Consequently, the Court denies Defendant's request to provide supplemental briefing.[16]

**B. Substantial evidence on the record as a whole supports the ALJ's finding that Plaintiff does not meet or medically equal the criteria for listing 12.05C.**

Plaintiff argues that the evidence supports his assertion that he met or medically equaled the criteria for Listing 12.05C. (Pl.'s Mem. [Docket No. 11], at 7-9). As noted in Part III.A, supra, to meet the criteria of Listing 12.05C a claimant must demonstrate: "'(1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" McNamara, 590 F.3d at 610-11 (quoting Maresh, 438 F.3d at 899). Plaintiff states that the 2005 IQ scores fall within the acceptable range to meet the listing's first

---

[16] Because the Court concludes, in Part III.B, infra, that substantial evidence on the record as a whole supports the ALJ's finding that Plaintiff did not meet or medically equal the criteria for Listing 12.05C, the Court finds there is no prejudice to Defendant by denying the request for additional briefing.

prong. (Id. at 8). Although Plaintiff does not specifically address the second prong, he cites to a psychological evaluation in the record that includes the results of an IQ test of Plaintiff performed on August 3, 1981, when Plaintiff was 19 years old. (Id. (citing Tr. 310)). Finally, Plaintiff argues that the ALJ's finding Plaintiff's "mild schizoid personality" to be a "severe impairment" is sufficient to meet the third prong. (Id. at 8-9 (citing Tr. 18)).[17]

With regard to Listing 12.05C, the ALJ wrote:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The undersigned considered the 2005 WAIS results in conjunction with the overall evidence. While it may on its own meet the criteria of paragraph C, the undersigned is inclined to follow the credible testimony of the medical expert. The undersigned evaluated the 2005 WAIS results with the +/- ranges in conjunction with the much improved scores from 1984 and the claimant's overall level of functioning and work history and finds that the claimant's IQ more accurately reflected the higher scores than indicated in 2005.

(Tr. 20). In essence, the ALJ held that Plaintiff did not meet the first prong of Listing 12.05C, despite the fact that his 2005 IQ scores fall within the specified range of 60 through 70.

The Court concludes that substantial evidence on the record as a whole supports the ALJ's finding that Plaintiff did not meet the first prong of Listing 12.05C. The ALJ acknowledged that the Plaintiff's 2005 IQ scores "may on [their] own meet the criteria of Paragraph C." (Tr. 20). However, the ALJ also found evidence sufficient to undermine the validity of the 2005 IQ scores. In particular, the ALJ noted that Plaintiff's 1984 IQ scores were substantially higher than his later scores. (Id.). The ALJ also noted the testimony of the medical expert, who described Plaintiff as "borderline intellectual functioning," and not as "mentally

_____

[17] Although Plaintiff cites to Tr. 16, which is the starting page of the ALJ's decision, his finding that mild schizoid personality is a "severe impairment" comes on Tr. 18.

retarded.[18] (Id.).  Finally, the ALJ observed that Plaintiff's "level of functioning and work history" were more consistent with his higher 1984 IQ test scores than with his 2005 IQ test scores.  (Id.).

The Eighth Circuit has held that "the Commissioner need not rely exclusively on IQ scores, and that the Commissioner may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole."  Robinson v. Astrue, 2010 U.S. Dist. LEXIS 9476, at *32-33 (E.D. Mo. Feb. 4, 2010) (quoting Muncy v. Apfel, 247 F.3d 728, 733 (8th Cir. 2001)); see also Peltier v. Barnhart, 2007 U.S. Dist. LEXIS 44911, at *12 (D.N.D. June 20, 2007) ("an ALJ may disregard a claimant's score if the score is inconsistent with the claimant's daily activities and behavior").  That is what the ALJ has done here.  Presented with multiple IQ scores, the ALJ considered additional evidence in determining whether Plaintiff met the first prong of Listing 12.05C.

Similarly, the Court in Robinson was presented with a plaintiff who had IQ scores of 77 at 12 years old and again at age 14 or 15 years old, 78 at 18 or 19 years old, and a more recent IQ score of 65.  Robinson, 2010 U.S. Dist. LEXIS 9476, at *38.  "The ALJ also considered that Planitiff's more recent IQ score was inconsistent with earlier scores without anything in the record showing that Plaintiff had any illness, injury, or circumstances that would lead to a decreased cognitive functioning."  Id.  Ultimately, the Robinson court concluded that substantial evidence on the record as a whole supported the ALJ's conclusion that the plaintiff did not meet or medically equal Listing 12.05C.  Id. at *46.

In the present case, Plaintiff argues that the ALJ, when presented with multiple IQ scores, was required to use the lowest reported score, citing to Listing 12.00D.6.c, which provides: "In

---

[18] "[T]he difference between borderline intellectual functioning and mental retardation is significant."  Robinson v. Astrue, 2010 U.S. Dist. LEXIS 9476, at *31 (E.D. Mo. Feb. 4, 2010) (citing Roberts v. Apfel, 222 F.3d 466, 470 n.3 (8th Cir. 2000)).

cases where more than one IQ is customarily derived from the test administered, *e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series*, we use the lowest of these in conjunction with 12.05." (Emphasis added.) Thus, Plaintiff argues, the ALJ was required to disregard the higher 1981 IQ score and 1984 IQ scores, and to consider only the 2005 IQ scores. (Pl.'s Mem. [Docket No. 11], at 8.) However, Plaintiff misreads the instruction in Listing 12.00D.6.c, which requires the ALJ to consider only the lowest score *within a single test*, but <u>does not</u> limit an ALJ's discretion when considering *inconsistent scores from multiple tests*. <u>Muncy</u>, 247 F.3d at 733 ("The Social Security regulations do not specify, however, which score the ALJ should disregard when there are differing scores from two apparently valid IQ tests."); <u>Peltier</u>, 2007 U.S. Dist. LEXIS 45911, at *11 (same (citing <u>Muncy</u>)).

This reading of Listing 12.00D.6.c is consistent with the general rule that, "[a]bsent any evidence of a change in a plaintiff's intellectual functioning, it is appropriate to assume that the plaintiff's IQ has not changed since his twenty-second birthday." <u>Rogers v. Astrue</u>, No. 09-cv-1214, 2010 U.S. Dist. LEXIS 86623, at *42 (D. Minn. July 14, 2010) (Nelson, M.J.) (citing <u>Maresh</u>, 438 F.3d at 899 (citing, in turn, <u>Muncy</u>, 247 F.3d at 734)), <u>adopted by</u> 2010 U.S. Dist. LEXIS 86620 (D. Minn. Aug. 23, 2010) (Frank, J.).

To summarize, Plaintiff was evaluated at ages 19 (the 1981 IQ score) and 22 (the 1984 IQ scores), and both times received IQ scores above 70, which would have disqualified him from Listing 12.05C. He was evaluated again at 44 years old (the 2005 IQ scores), at which time he presented significantly lower IQ scores which, on their own, would meet the requirements of Listing 12.05C. However, the record contains no evidence of any event, such as illness or injury, that would account for the significant drop in Plaintiff's IQ score. Additionally, his educational achievement and employment history are more consistent with the earlier, higher, IQ scores than

they are with the newer, lower, IQ scores. Under these circumstances, the ALJ did not err as a matter of law in considering the earlier, higher, IQ scores and in disregarding the newer, lower, IQ scores. Peltier, 2007 U.S. Dist. LEXIS 45911, at *11-12. Consequently, the Court finds that substantial evidence on the record as a whole supports the ALJ's determination that Plaintiff did not meet or medically equal the criteria for Listing 12.05C.

In the alternative, even if the Court had found sufficient evidence in the record as a whole to reverse the ALJ with regard to the first prong of Listing 12.05C, the Court would find that Plaintiff would not meet the criteria for the listing because the record as a whole lacks sufficient evidence to demonstrate that he meets the second prong, which requires a showing of "an onset of impairment before age 22." McNamara, 590 F.3d at 610-11 (quoting Maresh 438 F.3d at 899).

The Eighth Circuit has, in certain instances, found evidence of the onset of mental retardation before age 22, even where there is no direct evidence such as an early IQ test. For example, in Maresh, the court found such evidence in the fact that the plaintiff struggled in special education classes. 438 F.3d at 899. Similarly, in Christner v. Astrue, 498 F.3d 790 (8th Cir. 2007), the court found such evidence in the fact that the plaintiff dropped out of high school and special education classes. Id. at 793.

However, in the present case, although Plaintiff attended special education courses, he graduated from high school, and even completed a post-secondary technical college program in auto body repair. (Tr. 122, 264, 310). Additionally, where Maresh and Christner lacked direct evaluations of the claimant's mental capabilities at or around age 22, in the present case the record demonstrates that Plaintiff at 19 years old had an IQ test Full Score of 85, and at 22 years old had an IQ test score no lower than 79. (Tr. 310-11). Such scores would not have qualified

Plaintiff for Listing 12.05C. Consequently, the Court concludes that even if Plaintiff had met the requirements of the first prong of Listing 12.05C—which he did not—he also would have failed to meet the requirements of the second prong and, therefore, substantial evidence on the record as a whole would have supported the ALJ's conclusion that Plaintiff was not disabled.[19]

**C. Plaintiff received a full and fair hearing, and remand to the ALJ is not necessary.**

Plaintiff asserts that he did not receive a full and fair hearing, because "the ALJ failed to ascertain from the [medical expert] the extent to which Fraser met or equaled Listing 12.05." (Pl.'s Mem. [Docket No. 11], at 9). Thus, Plaintiff argues, a remand is appropriate to "fully and fairly" develop the medical record.

"The administrative hearing is not an adversarial proceeding. Therefore, an ALJ is obligated to fully and fairly develop the record, even in cases such as this where the Plaintiff is represented by counsel." Rogers, 2010 U.S. Dist. LEXIS 86623, at *40 (citing, among others, Battles v. Shalala, 36 F.3d 43, 44 (8th Cir. 1994)). However, "the ALJ does not need to further develop the record where 'additional information would add nothing to the ALJ's deliberative process.'" Kreger v. Astrue, No. 10-cv-3095, 2011 U.S. Dist. LEXIS 100718, at *61 (D. Minn. Aug. 15, 2011) (Leung, M.J.) (quoting Halverson v. Astrue, 600 F.3d 922, 934 (8th Cir. 2010) (edits omitted)), adopted by 2011 U.S. Dist. LEXIS 100835 (D. Minn. Sept. 6, 2011) (Magnuson, J.). Accordingly, "[w]here 'the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations,' the claimant has received a 'full and fair hearing.'" Jones v. Astrue, 619 F.3d 963, 969 (8th Cir. 2010) (quoting Halverson, 600 F.3d at

---

[19] Because the Court finds that substantial evidence on the record as a whole supports the ALJ's decision with regard to the first prong of Listing 12.05C, and that substantial evidence on the record as a whole would not support Plaintiff's claim with regard to the second prong of Listing 12.05C, the Court need not address whether the ALJ's description of Plaintiff's "mild schizoid personality" as a "severe impairment" meets the requirements of the third prong of Listing 12.05C.

933).  Whether the record has been adequately developed is a case-by-case decision.  <u>Rogers</u>,

2010 U.S. Dist. LEXIS 86623, at *10 (citing <u>Battles</u>, 36 F.3d at 45).  "A remand is appropriate

when an incomplete record causes a claimant to be treated unfairly or prejudiced."  <u>Priley v.</u>

<u>Astrue</u>, No. 12-cv-1492, 2013 U.S. Dist. LEXIS 89125, at *24 (D. Minn. May 22, 2013) (Keyes,

M.J.) (citing <u>Highfill v. Bowen</u>, 832 F.2d 112, 115 (8th Cir. 1987), <u>adopted by</u> 2013 U.S. Dist.

LEXIS 88688 (June 24, 2013) (Ericksen, J.).

After thoroughly reviewing the record, including the testimony of the medical expert, Dr.

Shilling, this Court finds that no further hearing is required, as there is substantial evidence on

the record as a whole to support the ALJ's decision.  The ALJ specifically asked Dr. Shilling to

"set forth [Plaintiff's] impairments then as you understand them to be."  (Tr. 38).  Dr. Shilling

testified that Plaintiff had "borderline intellectual functioning," (Tr. 39), which, as this Court has

already noted, differs "significantly" from mental retardation.  <u>See</u> fn.18, <u>supra</u>.  Additionally,

Dr. Shilling testified that Plaintiff had only "mild" limitations with regard to daily activities.  (Tr.

39).  Finally, Dr. Shilling described the only limited restrictions that he would recommend for

Plaintiff in employment as being work similar to jobs Plaintiff previously had held.  (Tr. 39-41).

Dr. Shilling's testimony is consistent with the 1984 IQ scores, cited by the ALJ in his decision,

which indicated that Plaintiff was not in the range required to meet the first prong of Listing

12.05C.  Dr. Shilling's testimony also was corroborated at the hearing by the testimony of the

vocational expert, Mr. Adkin, who stated his opinion that Plaintiff could return to the type of

work that he had maintained continuously for most of the fifteen (15) years prior to the alleged

onset of his disability.  (Tr. 41-42).

**D.  The "other issues" raised by Plaintiff are insufficient to undermine the ALJ's determination that Plaintiff was not disabled between the time of the alleged onset of his disability, October 21, 2009, and the date of the ALJ's decision, May 17, 2011.**

Finally, Plaintiff briefly itemizes, but does not fully articulate, several "other issues" that he asserts the ALJ either failed to consider, or failed to fully develop a record of, and urges the Court to remand to the ALJ for further consideration. (Pl.'s Mem. [Docket No. 11], at 9-10). However, the Court finds these arguments unavailing.

First, Plaintiff alleges that "[t]he ALJ failed to follow the Administration's own regulations and rulings by not seeking the opinion of a medical expert regarding [Plaintiff]'s blindness in his left eye." (Id. at 9).[20] The record contains a single reference, in the Adult Third-Party Function Report filled out by Plaintiff's mother, indicating that Plaintiff "is considered legally blind in [his] left eye." (Tr. 157). The ALJ made no mention of this finding in his decision. However, "to the extent the ALJ may not have addressed every detail of every report or record, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Jones v. Astrue, 2012 U.S. Dist. LEXIS 56401, at *45 (E.D. Mo. Mar. 19, 2012) (citing Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) (ALJ's failure to address a specific listing was not reversible error); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995) (ALJ's failure to mention a particular fact "does not mean he did not consider it")), adopted by 2012 U.S. Dist. LEXIS 56396 (E.D. Mo. Apr. 23, 2012).

In the present case, there is no suggestion in the record that Plaintiff's alleged visual impairment limited his ability to work. At the hearing, the ALJ asked Plaintiff directly about his physical condition, and Plaintiff identified no ailments. (Tr. 32). Accordingly, the ALJ did not commit reversible error by not seeking medical expert testimony concerning Plaintiff's alleged vision trouble. See Brown v. Astrue, No. 10-cv-4860, 2011 U.S. Dist. LEXIS 144307, at *39 (D. Minn. Nov. 22, 2011) (Rau, M.J.) (where claimant made "no assertions that cognitive or psychologically-based symptoms affected [his] ability to work," claimant was not prejudiced by

_____

[20] Plaintiff does not state which "regulations and rulings" were violated by this omission.

the ALJ's failure to seek additional information), adopted by 2011 U.S. Dist. LEXIS 143205 (D. Minn. Dec. 13, 2011).

Additionally, Plaintiff asserts that "[a] combination of mental and physical impairments *may* have met Listing 12.05C or equaled the Listing if the mild schizoid personality disorder was included," alleging again that "the ALJ failed to fully and fairly develop the record." (Pl.'s Mem. [Docket No. 11], at 9 (emphasis added)). However, the Court has already determined that substantial evidence on the record as a whole supports the ALJ's determination that Plaintiff did not meet the first prong of Listing 12.05C, and that the evidence also fails to demonstrate that Plaintiff would have met the second prong of the listing. See Part III.B, supra. Because a claimant must satisfy all three elements of the listing, the ALJ did not commit reversible error by not articulating whether Plaintiff's "mild schizoid personality" *may* have met the third prong.

Next, Plaintiff argues that neither Disability Determination Services nor the ALJ considered the Program Operation Manual Systems Section DI 24510.057 ("POMS DI 24510.057"). (Pl.'s Mem. [Docket No. 11], at 10). POMS "guidelines do not have legal force, and do not bind the Commissioner," yet the Eighth Circuit has held "that an ALJ should consider the POMS guidelines." Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003). POMS DI 24510.057 § B2 provides: "*If a claimant is unable to sustain work activities in an ordinary work setting on a regular and continuing basis*, explain why the claimant is not capable of sustaining a 40-hour workweek." POMS DI 24510.057 (emphasis added), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510057 (last viewed July 16, 2013).

However, in the present case the ALJ never found the condition precedent, i.e., that Plaintiff "is unable to sustain work activities in an ordinary work setting on a regular and continuing basis." Nor does the record contain any evidence that Plaintiff is in fact unable to do

so. The record instead reflects that, in the fifteen (15) years prior to the alleged onset of his disability, Plaintiff often held two or more jobs at once. See Part I.B, supra.[21] Furthermore, despite the Eighth Circuit's instruction that an ALJ "should consider" the POMS guidelines, Plaintiff provides no authority for the proposition that the ALJ's failure to do so constitutes reversible error. Given the present record, the Court cannot conclude that a remand is required on this basis.

Finally, Plaintiff argues that the ALJ erred at Step 4 in the sequential evaluation process by considering that Plaintiff, at the time of the hearing, had recently obtained part-time employment, as this did not demonstrate that Plaintiff was "capable of working eight hours a day, five days a week on [a] 'regular and continuing basis.'" (Pl.'s Mem. [Docket No. 11], at 10 (quoting SSR 96-8p)). However, SSR 96-8p states that:

> The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the last 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.

SSR 96-8p, fn.2, available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html (last viewed July 16, 2013). The record demonstrates that, during the fifteen (15) years prior to the alleged onset of his disability, Plaintiff worked continuously for more than thirteen (13) years, holding several different jobs for at least one (1) year each, i.e., "long enough . . . to learn to do" the job. See Part I.B, supra. Furthermore, the vocational expert, Mr. Adkins, testified that Plaintiff retained the capacity to perform the jobs he had held during the fifteen (15) years prior to the alleged onset of his disability. (Tr. 41-42). On the record presently before it, the Court

---

[21] Indeed, at the time of the hearing before the ALJ, Plaintiff was again employed with TJ Maxx doing similar work. Although his work hours in his most recent job were part-time work, there is nothing in the record to suggest that his part-time status was due to any qualifying disability.

cannot conclude that the ALJ committed reversible error by considering Plaintiff's recent part-time employment.

## IV.    CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.  Plaintiff's Motion for Summary Judgment [Docket No. 10] be **DENIED**; and

2.  Defendants' Motion for Summary Judgment [Docket No. 13] be **GRANTED**.

Dated: July 17, 2013                                                 s/Leo I. Brisbois
                                                                     LEO I. BRISBOIS
                                                                     United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by July 31, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.